**BENJAMIN GUBERNICK** (SBN 321883)
Gubernick Law P.L.L.C.
10720 W. Indian School Rd., Suite 19, PMB 12
Phoenix, AZ 85037
(734) 678-5169
ben@gubernicklaw.com


Attorney for Plaintiff


## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA


| | |
|---|---|
| THOMAS C. SANDOVAL, an individual;<br><br>         Plaintiff,<br><br>   v.<br><br>COINBASE, INC., a Delaware corporation;<br><br>         Defendant. | CASE NO.:<br><br>**COMPLAINT**<br><br>[CLASS ACTION]<br><br>1. VIOLATION OF THE UNFAIR COMPETITION LAW<br><br><br>(Jury Trial Demanded) |


Thomas Sandoval ("Plaintiff") through undersigned counsel, on behalf of himself and all others similarly situated, brings this Class Action Complaint against Coinbase, Inc. ("Defendant" or "Coinbase") and alleges upon personal knowledge as to his own actions, and upon information and belief as to counsel's investigations and all other matters, as follows:

## NATURE OF ACTION

1.　　This class action seeks recovery for persons who paid commissions for securities illegally sold to them by Coinbase.

2.　　Coinbase holds itself out as a digital asset exchange, essentially a

commodities broker for cryptocurrencies. It is not licensed to sell securities.

3.      Nonetheless, Coinbase sold a "token" called Ripple (hereafter referred to by its trading symbol: "XRP"), the value of which was entirely linked to the success or failure of Ripple Labs, Inc. ("Ripple Co.") the company that created the token, and the managerial efforts of Ripple Co.'s executives.  Investors in XRP, such as Plaintiff, reposed an expectation of profit in such managerial efforts by Ripple Co.'s executives and purchased the token in order to make money on their investment.

4.      On information and belief, Coinbase, because of its technological integration into XRP's nodes and statements made by Ripple Co.'s executives, Coinbase knew that XRP was not a commodity, but rather a security under federal securities laws.

5.      Despite its knowledge that XRP was a security, Coinbase continued offering XRP to the public and charged commissions for the sales.

## PARTIES

6.      Plaintiff Thomas Sandoval is an individual residing in St. Louis County, Missouri.

7.       Defendant Coinbase, Inc. is a Delaware corporation. Its principal place of business is located at 100 Pine Street Suite 1250. San Francisco, California 94111.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction over this matter under the Class Action Fairness Act because the parties are minimally diverse, the amount in controversy exceeds $5,000,000, and the putative class numbers more than 100.

9.      Venue is proper in this district because Defendant is headquartered in the Northern District of California.

## FACTUAL ALLEGATIONS

10.     Coinbase holds itself out as a digital asset exchange, essentially a commodities broker for cryptocurrency "tokens" such as Bitcoin. Coinbase is not licensed to sell securities.

11.     Until late this month Coinbase sold the XRP token, the value of which was entirely linked to the success or failure of Ripple Co. and the managerial efforts of its executives.  Indeed, Ripple Co.'s survival as a corporate entity depended on its sale of unlicensed XRP securities to the public to fund its business operations.

12.     XRP is a security and not a commodity because Ripple Co. has sole control over the purported cryptocurrency's "nodes," and is therefore a common enterprise for purposes of the federal securities laws.  Investors such as Plaintiff invested capital in XRP with the expectation of profit from Ripple Co.'s sole efforts.

13.     A node is a computer server that holds the transaction ledger for the currency and processes transactions.

14.     All non-security cryptocurrencies use decentralized nodes, so that there is not a single point of failure, and no single entity controls the protocol-unit. For example, there is no company that controls Bitcoin.

15.     On information and belief, Coinbase, as a result of its integration into Ripple Co.'s nodes, knew that Ripple Co. controlled all of the purported cryptocurrency's nodes, and XRP's success or failure was entirely intertwined with that of Ripple Co.

16.     On information and belief, Coinbase knew at all relevant times that XRP did not meet the definition of a commodity—which Coinbase could legally sell to the public—but was in fact a security, which it could not legally sell to the public.

17.     On December 22, 2020, the Securities and Exchange Commission initiated an action against Ripple Co. for engaging in the unlicensed sale of securities.

18.     On December 28, 2020, Coinbase stopped offering XRP for sale to the public.

19.     Consumers who purchased XRP on Coinbase paid a commission to Coinbase.

20.     Coinbase's actions of offering XRP to the public and collecting commissions from purchasers emanated from the state of California.

21.     On November 6, 2020 and again on December 17, 2020, Plaintiff purchased XRP on Coinbase and paid a commission to Coinbase.

## CLASS ALLEGATIONS

22.     Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to Fed. R. Civ. P. 23. Plaintiff seeks to represent the following class of persons:

**The Class**: All persons who purchased XRP on Coinbase during the applicable statute of limitations and paid a commission to Coinbase.

23.     Specifically excluded from the Class are: (a) any officers, directors or employees of Defendant; (b) any judge assigned to hear this case (or spouse or immediate family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and (e) any attorneys of record and their employees.

24.     Plaintiff reserves the right to amend or modify the class definition with greater specificity, by further division into subclasses, or by limitation to particular issues.

25.     **Numerosity**. Class members are so numerous that joinder of each individual class member would be impracticable and unfeasible, and the disposition of their claims as a class will benefit the parties, the Court, and the interests of justice.

26.     **Ascertainability**. The proposed Class is ascertainable from objective criteria. Specifically, Defendant maintains business records which include the names, contact information and other identifying information of members of the proposed Class.

27.     **Commonality and Predominance**. There is a well-defined community of interest among the Class's members and common questions of *both* law and fact predominate over questions affecting individual members. These common legal and factual questions include, but are not limited to, whether Coinbase violated California's Unfair Competition Law by selling XRP to the public.

28.     **Typicality**. Plaintiff's claims are typical of those of all Class members in that they arise out of the same course of conduct of Defendant, and enable him to seek the same relief under the same theories of recovery. The effort Plaintiff undertakes to pursue his claims will significantly benefit the Class' members because of the identical nature of the issues across the Class.

29.     **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff shares a common interest with all Class members. Plaintiff has suffered an injury-in-fact because of Defendant's conduct, as alleged herein. Plaintiff has retained counsel who are competent and experienced in the prosecution of complex class action litigation. Plaintiff and his counsel will prosecute this action vigorously and faithfully for the benefit of the Class's members. Plaintiff has no interests contrary to the Class's members and will fairly and adequately protect the interests of the Class.

30.     **Community of Interest.** The proposed Class has a well-defined community of interest in the questions of fact and law to be litigated. These common questions of law and fact predominate. The named Plaintiff's claims are typical of the Class's members.

31.     **Superiority**. The certification of the Class in this action is superior to the litigation of a multitude of cases by members of the putative Class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are members of the Class who are unlikely to join or bring an action due to, among other reasons, their reluctance to spend large sums of time and money to recover a relatively modest individual recovery. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among Class members in relationship to the benefits received. The damages and other potential recovery for each individual member of the Class are modest relative to the substantial burden and expense of individual prosecution of these claims. Given the dollar amount of the individual members of the Class' claims, few, if any, could or would afford to seek legal redress individually for the wrongs complained of herein. Even if the members of the Class could afford individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of

scale, and comprehensive supervision by a single court.

32.     In the alternative, the above-referenced Class may be certified because:

(a) The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members' claims which would establish incompatible standards of conduct for Defendant;

(b) The prosecution of separate actions by individual members of the Class would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the Class who are not parties to the adjudications, or which would substantially impair or impede the ability of other members to protect their interests; and,

(c) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class.

## FIRST CAUSE OF ACTION

### Business and Professions Code Section 17200

### (Class Claim)

33.     Plaintiff incorporates all preceding and succeeding allegations as if fully set forth herein.

34.     By engaging in the unlicensed sale of XRP, Coinbase engaged in acts of unfair competition, as defined by section 17200, *et seq*. of the California Business and Professions Code (the "Unfair Competition Law" or "UCL").

35.     The actions, omission, misrepresentations, practices and non-disclosures of Defendant, as alleged herein, constituted a continuous course of conduct of unfair competition.

36.     Defendant's actions were "unlawful" as that term is used in the UCL, in that Coinbase was not licensed to sell securities to the public.

37.     Defendant's actions were also "fraudulent" as that term is used in the UCL,

in that Coinbase falsely represented that XRP was a commodity when, on information and belief, Defendant knew it was a security.

38.   Defendant's actions were also "unfair" as that term is used in the UCL, in that by selling XRP securities Defendant gained an unwarranted competitive advantage over digital asset exchanges that only sold commodities.

39.   As a result of Defendant's conduct, Coinbase received commissions from Plaintiff and all other Class members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly aggrieved persons, pray for judgment against Defendant as follows:

1.   For an order certifying this matter as a class action and appointing Plaintiff and his undersigned counsel to represent the Class in this litigation;

2.   A judgment requiring Defendant to pay compensatory damages as required by law, as well as reasonable attorneys' fees and costs of suit;

3.   Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

Date: December 30, 2020

By:_____

**BENJAMIN GUBERNICK** (SB# 321883)
Gubernick Law P.L.L.C.
10720 W. Indian School Rd., Suite 19,
PMB 12
Phoenix, AZ 85037
(734) 678-5169
ben@gubernicklaw.com